# EXHIBIT 1

CT Corporation

# Service of Process Transmittal

03/17/2021
CT Log Number 539225860

**TO:** Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:** **Process Served in Texas**

**FOR:** Endo Pharmaceuticals Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Warren Clay Strickland, Pltf. vs. Purdue Pharmaceutical Products, L.P., et al., Dfts. // To: Endo Pharmaceuticals Inc<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Citation, Return, First Amended Petition, Certificate |
| **COURT/AGENCY:** | 151st Judicial District Court Harris County, TX<br>Case # 202070686 |
| **NATURE OF ACTION:** | Product Liability Litigation - Personal Injury - Opioids |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/17/2021 at 02:20 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next following the expiration date of 20 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Jeffrey B. Musslewhite<br>BROWN & MUSSLE WHITE, LLP<br>1776 Yorktown Suite 450<br>Houston, TX 77056<br>281-810-8780 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/17/2021, Expected Purge Date: 03/22/2021<br><br>Image SOP<br><br>Email Notification, Jobina Jones-McDonnell jones.jobina@endo.com<br><br>Email Notification, Helen Howlett howlett.helen@endo.com<br><br>Email Notification, Gary Cennerazzo gary.cennerazzo@parpharm.com<br><br>Email Notification, Carolyn Hazard hazard.carrie@endo.com<br><br>Email Notification, Par Notice Dept Par.noticeDept@parpharm.com<br><br>Email Notification, Carol Purcell Purcell.Carol@endo.com |

CT Corporation

# Service of Process Transmittal

03/17/2021
CT Log Number 539225860

**TO:** Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:** **Process Served in Texas**

**FOR:** Endo Pharmaceuticals Inc. (Domestic State: DE)

Email Notification, Sandra DiIorio DiIorio.Sandra@endo.com

Email Notification, Julianne Decker julianne.decker@parpharm.com

Email Notification, Bethann Miles miles.bethann@endo.com

Email Notification, Jacqueline Gorbey gorbey.jacqueline@endo.com

Email Notification, Lance Arnott sopverification@wolterskluwer.com

**REGISTERED AGENT ADDRESS:** C T Corporation System
1999 Bryan Street
Suite 900
Dallas, TX 75201

866-401-8252
EastTeam2@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Wed, Mar 17, 2021

**Server Name:** Caleb Malone

| | |
|---|---|
| Entity Served | ENDO PHARMACEUTICALS, INC. |
| Agent Name | C T CORPORATION SYSTEM |
| Case Number | 202070686 |
| Jurisdiction | TX |

3/17 by CM

CAUSE NO. 202070686

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO: 892965 TRACKING NO: 73849139
EML

| | |
|---|---|
| Plaintiff:<br>STRICKLAND, WARREN CLAY<br>vs.<br>Defendant:<br>PURDUE PHARMACEUTICAL PRODUCTS LP | In The 151st<br>Judicial District Court of<br>Harris County, Texas<br>201 CAROLINE<br>Houston, Texas |

**CITATION CORPORATE**

**THE STATE OF TEXAS**
**County of Harris**

**To: ENDO PHARMACEUTICALS INC (DELAWARE CORPORATION) MAY BE SERVED THROUGH ITS REGISTERED AGENT CT CORPORATION SYSTEM**
**1999 BRYAN STREET #900, DALLAS TX 75201**

Attached is a copy of: PLAINTIFFS FIRST AMENDED PETITION

This instrument was filed on March 1, 2021 in the above cited cause number and court. The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your Attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 20 days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

This citation was issued on March 11, 2021, under my hand and seal of said court.

Marilyn Burgess

Issued at the request of:

Musslewhite, Jeffrey B.
1776 YORKTOWN SUITE 450
HOUSTON, TX 77056
281-810-8780
Bar Number: 24041555

DISTRICT COURT OF HARRIS COUNTY TEXAS

Marilyn Burgess, District Clerk

Harris County, Texas
201 CAROLINE Houston Texas 77002
(PO Box 4651, Houston, Texas 77210)

Generated By:CYNTHIA CLAUSELL

Tracking Number: 73849139

EML

**CAUSE NUMBER: 202070686**

| | |
|---|---|
| **PLAINTIFF: STRICKLAND, WARREN CLAY** | **In the 151st** |
| **vs.** | **Judicial District Court of** |
| **DEFENDANT: PURDUE PHARMACEUTICAL PRODUCTS LP** | **Harris County, Texas** |

OFFICER - AUTHORIZED PERSON RETURN

Came to hand at _______ o'clock ___. M. on the _________ day of _________________________, 20_____. Executed at

(Address)_____________________________________________________________________________________________
in

_____________________ County at o'clock ___. M. On the _________ day of _________________________, 20_____, by

Delivering to _________________________________________________defendant, in person, a true copy of this Citation together with the accompanying ______ copy (ies) of the «Attachment». Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _______________day of __________________________________, 20.

Fees $__________________________

______________________________________________ By________________________________________

Affiant Deputy

On this day, _________________________________________________, known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this ______ day of _________________________________, 20__.

___________________________________________

Notary Public

3/1/2021 5:03 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 51043766
By: TERESA KIRBY
Filed: 3/1/2021 5:03 PM

**CAUSE NO. 2020-70686**

| | | |
|---|---|---|
| **WARREN CLAY STRICKLAND, PLAINTIFFS,** | § | **IN THE DISTRICT COURT OF** |
| **v.** | § | |
| **PURDUE PHARMACEUTICAL PRODUCTS, L.P.; WALGREEN CO.; CVS PHARMACY, INC.; H-E-B, LP DEFENDANTS.** | § | **HARRIS COUNTY, TEXAS** |
| | § | **234TH JUDICIAL DISTRICT** |

**PLAINTIFF WARREN CLAY STRICKLAND'S FIRST AMENDED PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Warren Clay Strickland**, hereinafter referred to as "Plaintiff," and files this, his First Amended Petition against **PURDUE PHARMACEUTICAL PRODUCTS, LP, PURDUE PHARMA L.P., THE PURDUE FREDERICK COMPANY, JANSSEN PHARMACEUTICALS, INC, ENDO PHARMACEUTICALS, INC, JOHNSON & JOHNSON, ALLERGAN PLC, ACTAVIS PLC, ACTAVIS, INC., ALLERGAN FINANCE, LLC, ACTAVIS LLC, ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON PHARMA, INC., AND WATSON LABORATORIES, INC, MCKESSON CORPORATION, WALGREEN CO., CVS PHARMACY, INC.** and **HEB, LP** hereinafter referred to as "Defendants," and in support thereof forcause of action would respectfully show this Honorable Court as follows:

**I.**
**DISCOVERY AND DOCKET CONTROL**

1.1 Plaintiff requests that Discovery be conducted under Level III of the TEXAS RULES OF CIVIL PROCEDURE. Plaintiff hereby requests that the parties to the lawsuit be permitted to

enterinto an agreed docket control order to schedule the deadlines of the instant action.

## II.
## PARTIES

2.1 Plaintiff Warren Clay Strickland is resident citizen of Houston, Harris County, Texas.

2.2 **PURDUE PHARMACEUTICAL PRODUCTS, LP** s a Delaware corporation that regularly commits torts in the State of Texas. Purdue manufactures, markets, and sells prescription pain medication and may be served, with process by serving its registered agent, Corporation Service Company d/b/a CSC• Lawyers Incorporating Service Company, 211 E. 7th, #620, Austin, TX78701. PURDUE PHARMA L.P. is a limited partnership organized under the laws of Delaware, and may be served through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. PURDUE PHARMA L.P. is, through its ownership structure, a Texas resident. PURDUE PHARMA INC. is a New York corporation with its principal place of business in Stamford, Connecticut, and may be served through its registered agent for service of process, Corporation Service Company, 80 State Street, Albany, NY 12207. THE PURDUE FREDERICK COMPANY is a Delaware corporation with its principal place of business in Stamford, Connecticut, and may be served through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808 (collectively, "Purdue").

2.3 **JANSSEN PHARMACEUTICALS, INC**. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. JANSSEN PHARMACEUTICALS, INC. is a wholly owned subsidiary of JOHNSON & JOHNSON (J&J), a New Jersey corporation with its principal place of business in New Brunswick, New Jersey,

and may be served through its registered agent for service of process, Attention: Legal Department, One Johnson & Johnson Plaza, New Brunswick, NJ 08933. ORTHO-MCNEIL¬ JANSSEN PHARMACEUTICALS, INC., now known as JANSSEN PHARMACEUTICALS, INC., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. JANSSEN PHARMACEUTICA INC., now known as JANSSEN PHARMACEUTICALS, INC., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. J&J is the only company that owns more than 10% of Janssen Pharmaceuticals' stock, and corresponds with the FDA regarding Janssen's products. Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals' drugs and Janssen's profits inure to J&J's benefit. (Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., and J&J are referred to as "Janssen").

2.4 **WALGREEN CO.** is an Illinois corporation employing pharmacists in the State of Texas. Walgreen's may be served by serving its registered agent, Prentice Hall Corporation System, 701 Brazos Street, Suite 1050, Austin, TX 78701.

2.5 **CVS PHARMACY, INC.** is a Rhode Island corporation employing pharmacists in theState of Texas. CS may be served by serving its registered agent, CT Corporation Systems, 1999 Bryan St., #900, Dallas, Texas 75201.

2.6 **H-E-B, LP** is a Texas corporation employing pharmacists in the State of Texas. HEB may be served by serving its registered agent, Abel Martinez, 646 South Flores, St., San Antonio, Teas 78204.

2.7 **ENDO HEALTH SOLUTIONS INC.** is a Delaware corporation with its principal place of business in Malvern, Pennsylvania, and may be served through its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. ENDO PHARMACEUTICALS, INC. is a wholly-owned subsidiary of Endo Health

Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. (Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. are referred to as "Endo"). Endo develops, markets, and sells opioid drugs in the U.S. and in Dallas County. Endo also manufactures and sells generic opioids in the U.S. and based on information and belief manufactured the opioids taken by the Plaintiff, by itself and through its subsidiary, Qualitest Pharmaceuticals, Inc.

2.8 **ALLERGAN PLC** is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland. ACTAVIS PLC acquired Allergan plc in March 2015, and the combined company changed its name to Allergan plc in January 2013. Before that, WATSON PHARMACEUTICALS, INC. acquired ACTAVIS, INC. in October 2012, and the combined company changed its name to ALLERGAN FINANCE, LLC as of October 2013. ALLERGAN FINANCE, LLC is a Nevada Corporation with its principal place of business in Parsippany, New Jersey, and may be served through its registered agent for service of process, The Corporation Trust Company of Nevada, 701 S. Carson St., Suite 200, Carson City, NV 89701. WATSON LABORATORIES, INC. is a Nevada corporation with its principal place of business in Corona, California, and is a wholly-owned subsidiary of Allergan pie (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.), and may be served through its registered agent for service of process, Corporate Creations Network, Inc., 8275 South Eastern Ave., #200, Las Vegas, NV 89123. ACTAVIS PHARMA, INC. (f/k/a Actavis, Inc.) is a Delaware corporation with its principal place of business in New Jersey and was formerly known as WATSON PHARMA, INC, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. ACTAVIS LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey, and may be served through its registered agent for

service of process, Corporate Creations Network, Inc., 3411 Silverside Rd., Tatnall Building, Suite 104, Wilmington, DE 19810. Each of these Defendants is owned by Allergan pie, which uses them to market and sell its drugs in the United States.

2.9 Upon information and belief, Allergan pie exercises control over these marketing and sales efforts and profits from the sale of Allergan/Actavis products ultimately inure to its benefit. (Allergan plc, Actavis plc, Actavis, Inc., Allergan Finance, LLC, Actavis LLC, Actavis Pharma, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Watson Laboratories, Inc. are referred to as "Actavis"). Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc. on December 30, 2008 and began marketing Kadian in 2009. Upon information and belief, Actavis manufactures, promotes, sells, and distributes opioids taken by Plaintiff.

2.10 **MCKESSON CORPORATION** ("McKesson") is a Delaware corporation with its principal place of business in San Francisco, California, and may be served through its registered agent for service of process, CSC - Lawyers Incorporating Service, 211 E. 7th Street, Suite 620, Austin, TX 78701. Upon information and belief, McKesson is a pharmaceutical distributor licensed to do business in Texas. Based upon information and belief McKesson distributes pharmaceuticals to retail pharmacies and institutional providers in all 50 states, including Texas and Harris County.

2.11 **CARDINAL HEALTH, INC.** ("Cardinal") is an Ohio Corporation with its principal place of business in Dublin, Ohio, and may be served through its registered agent for service of process, CT Corporation System, 4400 Easton Commons, Suite 125, Columbus, OH 43219. Cardinal does substantial business in Texas and, upon information and belief, Cardinal is a pharmaceutical distributor licensed to do business in Texas. Based upon information and belief Cardinal distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Texas and Harris County.

2.12 **AMERISOURCEBERGEN DRUG CORPORATION** ("Amerisource") is a

Delaware Corporation with its principal place of business in Chesterbrook, Pennsylvania, and may be served through its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. Amerisource does substantial business in Texas and, upon information and belief, Amerisource is a pharmaceutical distributor licensed to do business in Texas. Based upon information and belief Amerisource distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Texas and Harris County.

## III.
## JURISDICTION AND VENUE

3.1 This Court has jurisdiction in this matter because the damages to Plaintiff are within the jurisdictional limits of this Court. The amount in controversy is more than $500 but does not exceed $1,000,000.00.

3.2 All or a substantial part of the events or omission giving rise to the claim occurred in Harris County. Therefore, venue is proper pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE §15.001 and §15.002(a) (1). Johnson & Johnson, which contracted with poppy growers in Tasmania, supplied 60 percent of the opiate ingredients that drug companies used for opioids like oxycodone, and aggressively marketed opioids patients such as the Plaintiff as safe and effective. A Johnson & Johnson subsidiary, Janssen Pharmaceuticals, made its own opioids — a pill whose rights it sold in 2015.

3.3 All conditions precedent to the filing of this suit have been met.

## IV.
## FACTUAL BACKGROUND

4.1 The United States is in the midst of an opioid epidemic caused by Defendants' fraudulent marketing and sales of prescription opioids ("opioids") that has resulted in addiction, criminal activity, and loss of life. The opioid crisis has been described as "the AIDS epidemic of our

generation, but even worse."[1] On October 26, 2017, President Donald Trump "declared a nationwide public health emergency to combat the opioid crisis."[2]

4.2 In 2016 alone, health care providers wrote more than 289 million prescriptions for opioids, enough for every adult in the United States to have more than one bottle of pills. Americans "consume 85% of all the opioids in the world"[3] and are "the most medicated country in the world."[4]

4.3 Unfortunately, using opioids too often leads to addiction and overdose from opioids. In 2014, almost 2 million Americans were addicted to opioids.[5] That same year, more people died from drug overdoses than in any other year, and most overdose deaths involved an opioid. The Texas Legislature has found "that deaths resulting from the use of opioids and other controlled substances constitute a public health crisis."[6] In 2015, Texas "had the second highest total healthcare costs from opioid abuse in the nation ($1.96 billion)."[7]

4.4 In fact, accidental drug overdose deaths, of which reportedly at least two-thirds are opioid overdoses, are the leading cause of death for Americans under the age of 50. Accidental drug overdose deaths, predominantly from opioids, exceed the number of deaths caused by cars or guns.

---

[1] David Wright, "Christie on Opioids: "This is the AIDS Epidemic of Our Generation, but even Worse," (February 28, 2021), http://www.cnn.com/2017/10/27/politics/chris-christie-opioid-commission-aids-cnntv/index.html.

[2] Dan Merica, "What Trump's Opioid Announcement Means- and Doesn't Mean," (February 28, 2021), http://www.cnn.com/2017/10/26/politics/national-health-emergency-national-disaster/index.html.

[3] *Prevalence of Opioid Misuse*, BupPractice (Sept. 7, 2017), https://www.buppractice.com/node/15576.

[4] David Wright, "Christie on Opioids: "This is the AIDS Epidemic of Our Generation, but even Worse," (February 28, 2021), http://www.cnn.com/2017/10/27/politics/chris-christie-opioid-commission-aids-cnntv/index.html.

[5] Substance Abuse and Mental Health Services Administration, National Survey on Drug Use and Health, 2014.

[6] Opinion of the Attorney General of Texas, KP-0168 (Oct. 4, 2017), citing Act of May 26, 2017, 85th Leg., R.S., ch. 534, §3, 2017 Tex. Sess. Law Serv. 1467, 1468.

[7] Kerry Craig, "Opioid Addiction Results in one Woman's Daily Struggle," Oct. 7, 2017, https://www.ssnewstelegram.com/news/opioid-addiction-results-in-one-woman-s-daily-struggle/article_bded4eoa ab80-1 I e 7-a252-d3f304e26628.html.

The economic burden caused by opioid abuse in the United States is at least $78.5 billion,[8] including lost productivity and increased social services, health insurance costs, increased criminal justice presence and strain on judicial resources, and substance abuse treatment and rehabilitation.

4.5 This epidemic did not occur by chance. Defendants manufacture, market, distribute, and sell prescription opioids, including, but not limited to, brand-name drugs like OxyContin, Vicodin, Opana, Percocet, Percodan, Duragesic, Ultram, Ultracet, and generics like oxycodone, oxymorphone, hydromorphone, hydrocodone, fentanyl, and tramadol, which are powerful narcotics.

4.6 Historically, opioids were considered too addictive and debilitating for treating non-cancer chronic pain, such as back pain, migraines, and arthritis, and were used only to treat short-term acute pain or for palliative or end-of-life care. By the late 1990s or early 2000s, however, based on information and belief, each Defendant who manufactures and distributes opioids began a marketing scheme to persuade doctors and patients that opioids can and should be used ubiquitously and perpetually to treat moderate, non-cancer chronic pain. Based on information and belief manufactures of opioids spent large sums of money to promote the benefits of opioids for non-cancer moderate pain while trivializing, or even denying, their risks. The named Defendants who manufacture opiods promotional messages deviated substantially from any approved labeling of the drugs and caused prescribing physicians and consuming patients to underappreciate the health risks, and to overestimate the benefits, of opioids.

4.7 Contrary to the language of their drugs' labels, based on information and belief Defendants falsely and misleadingly, in their marketing: (1) downplayed the serious risk of addiction; (2) promoted and exaggerated the concept of "pseudoaddiction" thereby advocating that

---

[8] *See CDC Foundation's New Business Pulse Focuses on Opioid Overdose Epidemic*, Centers for Disease Control and Prevention (Mar. 15, 2017), https://www.cdc.gov/media/releases/2017/a0315-business-pulse-opioids.html.

the signs of addiction should be treated with more opioids; (3) exaggerated the effectiveness of screening tools in preventing addiction; (4) claimed that opioid dependence and withdrawal are easily managed; (5) denied the risks of higher opioid dosages; and (6) exaggerated the effectiveness of "abuse-deterrent" opioid formulations to prevent abuse and addiction.

4.8 Based on information and belief Defendant Manufacturers and Distributors disseminated these falsehoods through ads and/or their sales representatives who supported Defendants' message. Sales representatives, working at Defendants' behest, promoted highly addictive opioids through souvenirs and toys including, but not limited to, opioid brand-bearing stuffed plush toys, dolls, coffee cups, fanny packs, water bottles, notepads, pens, refrigerator magnets, clocks, letter openers, rulers, daytime planners, bags, puzzles, posters, hand-held calculators, clipboards, highlighters, flashlights, key chains, clothing, reflex mallcts, and mock-ups of the United Statcs Constitution.

4.9 Based on information and belief defendants also used third parties they controlled by: (a) funding, assisting, encouraging, and directing doctors, known as "key opinion leaders" ("KOLs") and (b) funding, assisting, directing, and encouraging seemingly neutral and credible professional societies and patient advocacy groups (referred to hereinafter as "Front Groups"). Based on information and belief Defendants worked with KOLs and Front Groups to taint the sources that doctors and patients relied on for ostensibly "neutral" guidance, such as treatment guidelines, Continuing Medical Education ("CME") programs, medical conferences and seminars, and scientific articles. After their individual and concerted efforts, Plaintiff believes Defendants. convinced doctors that instead of being addictive and unsafe for long-term use in most circumstances, opioids were required in the compassionate treatment of chronic pain.

4.10 Cardinal, AmerisourceBergen, and McKesson are three of the largest opioid distributors in the United States. Based on information and belief Cardinal, AmerisourceBergen, and

McKesson purchased opioids from Manufacturing Defendants herein and sold them to pharmacies servicing consumers in Harris County, including the Plaintiff's pharmacies.

4.11 The Manufacturing Defendants and Distributor Defendants worked hand and glove to glut the U.S. and take advantage of people including the Plaintiff in this suit. Each Defendant disregarded its legal duty to report suspicious opioid prescriptions, failed to implement sufficient controls to prevent opioid abuse, perpetuated falsehood and misrepresentations of opioid us and each Defendant financially benefitted from the other Defendants, disregarding their individual duties to exercise due care and due diligence in the manufacturing, sale, and distribution of dangerous narcotics.

4.12 Based on information and belief, Defendants spread false and deceptive statements related to opioid prescriptions taken by Plaintiff by (1) marketing their branded opioids directly to the Plaintiff's doctors and (2) deploying so-called unbiased and independent third parties to Harris County.

4.13 Based on information and belief, Defendants' direct marketing of opioids generally proceeded on two tracks. First, each Defendant conducted advertising campaigns touting the purported benefits of their branded drugs. Based on information and belief, Defendants spent more than $14 million on medical journal advertising of opioids in 2011, nearly triple what they spent in 2001, including $8.3 million by Purdue, $4.9 million by Janssen, and $1.1 million by Endo.

4.14 Based on information and belief, a number of Defendants' branded ads deceptively portrayed the benefits of opioids for chronic pain. For example, Endo distributed and made available on its website, www.opana.com, a pamphlet promoting Opana ER with photographs depicting patients with physically demanding jobs like a construction worker and chef, implying that the drug would provide long-term pain-relief and functional improvement. Purdue also ran a series of ads,

called " pain vignettes," for OxyContin in 2012 in medical journals. These ads featured chronic pain patients just like the Plaintiff and recommended OxyContin. One ad described a "54-year-old writer with osteoarthritis of the hands" and implied that OxyContin would help the writer work more effectively. Pursuant to a settlement agreement, Endo and Purdue agreed in late 2015 and 2016 to halt these misleading representations in New York, but based on information and belief, they continued to disseminate them in Texas.

4.15 This is case is a personal injury claim for injuries and damages sustained by Warren Clay Strickland as a result of the negligence of the Defendants in the manufacturing, sales, marketing, dissemination of information, and lack of effective controls to prevent abusive practices in proscribing and filling prescriptions.

4.16 Plaintiff Strickland suffered damages from the effects of consuming too much narcotic medication. OxyContin, Oxycodone and Hydrocodone are strong central nervous system depressants that, when taken appropriately, are intended to provide powerful pain relief to patients who suffer from extreme acute or chronic pain conditions. People who consume an unsafe dosage of these drugs can suffer from depression, kidney disease, suicidal thoughts as well as death. Unfortunately for Warren Strickland said medication was improperly marketed and Walgreen's pharmacy, CVS pharmacy or the HEB Pharmacy failed to monitor for red flags, how much medication was prescribed, by how many physicians it was prescribed, other medications being prescribed, interactions with other how much medication was being prescribed and consumed. Walgreen's pharmacy, CVS pharmacy or the HEB Pharmacy negligently filled prescriptions that should have raised red flags and failed to report these red flags.

## V.
## CLAIMS AGAINST PURDUE PHARMACEUTICALS, ENDO, AND JANSSEN PHARMACEUTICALS, INC

5.1 Plaintiff re-alleges and incorporates by reference each of the allegations contained in

the preceding paragraphs of this Complaint as though fully alleged herein.

5.2 Purdue Endo, and Janssen are liable under one or more of three different theories of liability recognized under Texas law. Purdue is strictly liable under the principles of RESTATEMENT (SECOND) OF TORTS, §§402A and 402B, and the new RESTATEMENT (THIRD) OF TORTS, for productdefects and misrepresentations.

5.3 Purdue's, Endo's and Janssen's conduct is unreasonable, and negligent, and was a proximate cause of Warren Strickland's injuries and damages. The negligence includes failure to warn, failure to test, failure to implement appropriate patient screening mechanisms, and over-promotion of Oxycontin,Oxycodone, Hydrocodone and other prescription opioids.

## VI.
## CLAIMS AGAINST
## AMERISOURCE, ENDO, ACTAVIS, MCKESSON AND CARDINAL

6.1. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged herein.

6.2. Amerisource, Endo, Activis, McKesson, and Cardinal have a duty to the plaintiff and the general public to exercise ordinary care in distributing dangerous narcotics. Amerisource, Endo, Activis, McKesson, and Cardinal have breached their duty by failing to prevent or reduce the distribution of opioids, perpetuating false statements and misinformation, and failing to report the increase in the distribution and/or sale of opioids. Amerisource, Endo, Activis, McKesson, and Cardinal have failed to prevent or reduce the distribution of opioids, perpetuated false statements and misinformation, and failed to report any increases in the sale of opioids, so that they could increase the sale and distribution of opioids, increase profits and receive rebates or kickbacks from Manufacturing Defendants. As a proximate result, Amerisource, Endo, Activis, McKesson, and Cardinal and their agents have caused Plaintiff substantial harm. As such Distributor defendants are liable for negligence. Based on information and belief, Amerisource, Endo, Activis, McKesson, and

Cardinal have acted willfully, wantonly, and maliciously.

## VII.
## NEGLIGENCE CLAIMS AGAINST WALGREENS, CVS AND HEB PHARMACY

7.1. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged herein.

7.2. Walgreen's, CVS and HEB Pharmacy, (hereinafter Pharmacy Defendants) are liable as the employer of the pharmacistswho dispensed medications the without regard to abuse and misuse of the opioid prescriptions. They owed Plaintiff the duty to exercise that degree of care, skill, and diligence ordinarily possessed and used by other members of the pharmacy profession in good standing under the same or similar circumstances.

7.3. In deciding whether there is a common-law duty, courts apply the risk-utility test. *Foster v. Denton ISD*, 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.); *see Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex.1998). The factors that courts use when applying the risk-utility test are the risk, foreseeability, and likelihood of injury balanced against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing this burden on the defendant. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex.1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994); *Nichols v. McKinney*, 553 S.W.3d 523, 528 (Tex. App.—Waco 2018, pet. denied). When these factors are balanced, the most important factor to consider is the foreseeability of the risk. *City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex.2009). Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex.1999) (plurality op.); *Madison v. Williamson*, 241 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The test for foreseeability is whether (1) the injury is of a general character that might reasonably have been anticipated and (2) the injured party is situated in relation to the wrongful act so that injury to her or to

one similarly situated might reasonably have been foreseen. *Mellon Mortg.*, 5 S.W.3d at 655. In addition to foreseeability, Courts also consider additional factors such as whether one party had superior knowledge of the risk. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex.2017); *Nabors Drilling, U.S.A., Inc. v. Escoto,* 288 S.W.3d 401, 404 (Tex.2009).

7.4. Here the Pharmacy Defendants had superior knowledge of the risk of the opioid use and superior knowledge of a patient prescription history and are in the best position to prevent the diversion of prescriptions. Pharmacy Defendants conduct education seminars, communicate with regulatory authorities, and employee highly trained and educated pharmacists and other staff—all of whom are in a better position to know of the risk of opioid abuse. Specifically, pharmacies are in a better position to know and explain certain risks related to opioid use including the risk of overdose, addiction, respiratory depression, or over-sedation, as well as risks involved in mixing opioids with alcohol or other medications. Additionally, pharmacists are in the best position to monitor the filling and use of controlled substances including opioids given their training and education and therefore, are in the best position to refuse to fill prescriptions that raise red flags.

7.5. Additionally, pharmacies, have access to a national database which monitors controlled substances prescription and are in the best position to look for red flags on a patient, prescriber, and store level, and to refuse to fill and to report prescriptionssuggestive of potential diversion and abuse. Therefore, the pharmacy defendants had a duty to block all suspicious orders on prescriptions. Pharmacy order data provides detailed insight into the volume, frequency, dose, and type of controlled and non-controlled substances a pharmacy typically orders. This includes non-controlled substances and Schedule IV controlled substances (such as benzodiazepines as Plaintiff used in this case), which are not reported to the DEA, but whose use with opioids can be a red flag of diversion. As acknowledged in an article CVS published in the New England Journal of Medicine, "[p]harmacies have a role to play in the oversight of prescriptions for controlled

substances, and opioid analgesics in particular." Mitch Betses, R.Ph., and Troyen Brennan, M.D., M.P.H., *Abusive Prescribing of Controlled Substances - A Pharmacy View*, N. ENGL. J. MED. 369;11, Sept. 12., 2013, at 989-991.

7.6. The Pharmacy Defendants have a particular "advantage" in meeting their obligations under the CSA because these entities can use "aggregated information on all prescriptions filled at the chain" in order to examine "patterns" of opioids and other "high-risk drugs" and target "inappropriate prescribing." *Id.* at 990. For example, pharmacy Defendants should properly use its chainwide dispensing data to identify "high risk prescribers" by "benchmarking" prescription data based on "several parameters," including "volume of prescriptions for high-risk drugs," "the proportion of the prescriber's prescriptions that were for such [high-risk] drugs, as compared with the volume and proportion for others in the same specialty and region," cash payment, ages of patients, and the prescriber's ratio of "prescriptions for noncontrolled substanceswith prescriptions for controlled substances." *Id.* This "[a]nalysis of aggregated data" from chainpharmacies can "target patterns of abuse," in the face of "the growing use of controlled substancesand resulting illnesses and deaths." *Id.* Accordingly, as CVS touts, "innovative use of transparentdata is only prudent." *Id.* Therefore, the Pharmacy defendants have superior knowledge of abuses, misuses, risks, and red flags which best situates the defendants to refuse prescription and provide basic information related to prescriptions and interactions with other prescriptions.

7.7. Specifically, pharmacists and pharmacies have a duty to exercises reasonable care in delivering dangerous narcotics substances by filling orders that they knew or should have realized were likely being diverted for illicit uses, abuses, and misuses, and by failing to maintain effective controls against illicit uses, abuses, and misuses from their retail stores, Defendants breached that duty and both created and failed to prevent a foreseeable risk of harm. Second, distributors and chains pharmacies are required to register with the DEA to distribute and/or dispense controlled

substances. *See* 21 U.S.C. § 823(a)-(b), (e); 28 C.F.R. § 0.100; 28 C.F.R. § 1301.71. As registrants, Defendants were required to "maint[ain]…effectivecontrols against diversion" and to "design and operate a system to disclose…suspicious orders of controlled substances." 21 U.S.C. § 823(a)-(b); 21 C.F.R. § 1301.74.

7.8. Administrative rules and regulations may serve as the basis for imposing a duty recognized in tort. *See Continental Oil Co. v. Simpson*, 604 S.W.2d 530, 534 (Tex. App.—Amarillo 1980, writ ref'd n.r.e.) (administrative rules and regulations). According to the Texas Administrative Code, Pharmacist have a duty to: (1) before dispensing an opioid, benzodiazepine, barbiturate, or carisoprodol for a patient shall consult the Texas Prescription Monitoring Program (PMP) database or a pharmacy management system that integrate data from the PMP, to review the patient's controlled substance history. Defendants failed to consult any database for patient information including prescription history.

7.9. Defendants were further required to take steps to halt suspicious orders. Specifically, Defendants had a duty to analyze data and store-level information for known red flags such as (a) multiple prescriptions to the same patient using the same doctor; (b) multiple prescriptions by the same patient using different doctors; (c) prescriptions of unusual size and frequency for the same patient; (d) orders from out-of-state patients or prescribers; (e) an unusual or disproportionate number of prescriptions paid for in cash; (f) ***prescriptions paired with other drugs frequently abused with opioids, like benzodiazepines, or prescription "cocktails"***; (g) ***volumes, doses, or combinations that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose***. Despite these red flags, Pharmacy Despite the presence of red flags and potential medication interactions Defendants failed to provide basic information concerning the prescriptions, interactions with Plaintiff's medications, filled suspicious prescriptions, and failed to exercise the degree of care, skill, and diligence owed to Plaintiff.

7.10. Walgreen's, CVS and HEB failed in conducting due diligence, failed in acting on the presence of red flags, and failed to provide even the most basic information regarding the effects of the combination of the medication they were prescribing, failed to obtain informed consent, failed to develop an effective system for monitoring suspicious prescriptions, and failed to monitor their customers, these failures constitutes sub- standard pharmacy care and is negligence as that term is defined at law. These actions, or lack thereof, were also a proximate cause of Plaintiff's damages.

## VIII.
## NEGLIGENCE *PER SE* CLAIMS AGAINST WALGREENS, CVS AND HEB PHARMACY

8.1. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged herein.

8.2. In the alternative to other counts, Pharmacy defendant's negligence described in herein, violated an administrative regulation}. Specifically, Pharmacy defendants failed to comply with 21 C.F.R. § 1301.74 and not maintaining records of prescriptions for controlled substances listed in Schedule II in compliance with 21 C.F.R. part 1304, in violation of 21 U.S.C. § 842(a)(5) These regulations clearly define a mandatory standard of conduct for which negligence per se can be applied. *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.—Texarkana 2002, pet. denied). To impose negligence per se for a violation of 21 C.F.R. § 1301.74, imposing tort liability would be fair, workable, and wise. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex.1998)

## IX.
## PLAINTIFF'S CLAIMS FOR DAMAGES

9.1 As a result of the negligence and gross negligence by Defendants, Plaintiff incurred necessary hospital and medical expenses and will continue to incur medical expenses in connection with said injuries for an undetermined length of time in the future.

9.2 As a direct and proximate result of the negligence of Defendant, Plaintiff suffered severe injuries and extreme physical pain, suffering and mental anguish, physical incapacity and in all probability, Plaintiff will be forced to endure physical pain, suffering, mental anguish and physical incapacity for an undetermined length of time and probably for the remainder of his life. Plaintiff continues to require ongoing medical treatment and in reasonable probability will continue to require medical treatment for the rest of his life.

9.3 All damages sought by Plaintiff include damages that were sustained in the past, and that, in reasonable probability, will be sustained in the future. Plaintiff seeks both pre- judgment and post-judgment interest as allowed by law, for all costs of Court, and all other relief,both at law and in equity. Therefore, Plaintiff hereby sees to recovery of all damages allowed bylaw, not to exceed $1,000,000.00 including any damages to compensate him for the following:

A. all necessary medical care expenses in the past;

B. all necessary medical care expenses that, in reasonable probability,Plaintiff will sustain in the future;

C. physical pain and suffering in the past;

D. physical pain and suffering that, in reasonable probability, Plaintiff will sustain in the future;

E. mental anguish in the past;

F. mental anguish that, in reasonable probability, Plaintiff will sustain in the future;

G. physical impairment in the past;

H. physical impairment that, in reasonable probability, Plaintiff will sustain in the future;

I. loss earning in the past and, in reasonable probability, will be lost in the future; and

## X.
## REQUEST FOR DISCLOSURE

10.1 Pursuant to Texas Rule of Civil Procedure 194, request is made that Defendant disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2 (a)-(l). Defendant must serve a written response to these Requests for Disclosure on Plaintiff within fifty (50) days after the service of this request. Failure to timely respond shall constitute an abuse of discovery pursuant to Texas Rule of Civil Procedure 215.

## XI.
## RULE 193.7 NOTICE

11.1 Plaintiff hereby puts Defendant on notice that Plaintiff intends to use Defendant's discovery responses as evidence at trial in accordance with such right and privileges established by Texas Rule of Civil Procedure 193.7.

## XII.
## JURY DEMAND

12.1 Pursuant to the Texas Rule of Civil Procedure 216, Plaintiff respectfully requests and demands a trial by jury.

## XIII.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Defendantbe cited to appear and answer herein as the law directs, and that upon final hearing, Plaintiff haveand recover judgment of and from the Defendant pursuant to the above and foregoing allegationsin such amounts not to exceed $1,000,000.00 as hereinabove set out and as the evidence may show proper at the time of trial, together with interest thereon at the legal rate, costs of Court, exemplary damages, attorneys' fees and for such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**BROWN & MUSSLEWHITE, LLP**

*<u>/s/ JEFF MUSSLEWHITE</u>*
Jeff Musslewhite
TBN: 24041555
Jeff@lbjmlaw.com
Lori L. Brown TBN:
00792375
Lori@lbjmlaw.com 1776
Yorktown, #450
Houston, Texas 77056
Telephone No.: 281-810-8780
Facsimile No.: 888-599-4190
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record on the 1st day of March, 2021 pursuant to the Texas Rules of Civil Procedure:

Jason M. Powers
Stacey Neumann Vu
Casey Downing
VINSON & ELKINS, L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Phone: 713-758-2522
Fax: 713-615-5809
Email: jpowers@velaw.com
svu@velaw.com
cdowning@velaw.com

Attorney for Defendant
H-E-B, LP

Lindsay B. Cohan
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, Texas 78701
Phone: 512-394-3000
Fax: 512-394-3001
Email: lindsay.cohan@dechert.com

Attorney for Defendant
Purdue Pharmaceutical Products LP

Phil Griffis
Jerry Mason
LAW OFFICE OF PHIL GRIFFS
1322 Space Park Drive, Suite A248
Houston, Texas 77058
Phone: 832-284-4013
Fax: 713-493-7253
Email: pgriffis@griffislawfirm.com
jmason@griffslawfirm.com

Attorney for Defendant
Walgreen Co.

John A. Scully
Nisha P. Byers
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Phone: 214-712-9500
Fax: 214-712-9540
Email: john.scully@cooperscully.com
nisha.byers@cooperscully.com

Attorney for Defendant
CVS Pharmacy, Inc.

*/s/Jeff Musslewhite*
JEFF MUSSLEWHITE

CT Corporation

# Service of Process Transmittal

03/18/2021
CT Log Number 539235115

**TO:** Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:** **Process Served in Delaware**

**FOR:** Endo Health Solutions Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Warren Clay Strickland, Pltf. vs. Purdue Pharmaceutical Products, L.P., et al., Dfts. // To: Endo Health Solutions Inc. |
| **DOCUMENT(S) SERVED:** | Citation, Return, First Amended Petition, Certificate of Service |
| **COURT/AGENCY:** | 151st Judicial District Court Harris County, TX<br>Case # 202070686 |
| **NATURE OF ACTION:** | Product Liability Litigation - Opioids |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/18/2021 at 16:40 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next following the expiration date of 20 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Jeffrey B. Musslewhite<br>BROWN & MUSSLE WHITE, LLP<br>1776 YORKTOWN SUITE 450<br>HOUSTON, TX 77056<br>281-810-8780 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/19/2021, Expected Purge Date: 03/24/2021<br>Image SOP<br>Email Notification, Jobina Jones-McDonnell jones.jobina@endo.com<br>Email Notification, Helen Howlett howlett.helen@endo.com<br>Email Notification, Gary Cennerazzo gary.cennerazzo@parpharm.com<br>Email Notification, Carolyn Hazard hazard.carrie@endo.com<br>Email Notification, Par Notice Dept Par.noticeDept@parpharm.com<br>Email Notification, Carol Purcell Purcell.Carol@endo.com<br>Email Notification, Sandra Dilorio Dilorio.Sandra@endo.com |

CT Corporation

**Service of Process Transmittal**
03/18/2021
CT Log Number 539235115

**TO:** Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:** **Process Served in Delaware**

**FOR:** Endo Health Solutions Inc. (Domestic State: DE)

Email Notification, Julianne Decker julianne.decker@parpharm.com

Email Notification, Bethann Miles miles.bethann@endo.com

Email Notification, Jacqueline Gorbey gorbey.jacqueline@endo.com

Email Notification, Lance Arnott sopverification@wolterskluwer.com

**REGISTERED AGENT ADDRESS:** The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801
866-401-8252
EastTeam2@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

| | |
|---|---|
| **Date:** | Thu, Mar 18, 2021 |
| **Server Name:** | ANGELA WILSON LEE |

| | |
|---|---|
| Entity Served | ENDO HEALTH SOLUTIONS INC. |
| Agent Name | THE CORPORATION TRUST COMPANY |
| Case Number | 202070686 |
| Jurisdiction | DE |

CAUSE NO. 202070686

COPY OF PLEADING PROVIDED BY PLT

RECEIPT No. 892965 TR# 73849138
EML

| | |
|---|---|
| Plaintiff:<br>STRICKLAND, WARREN CLAY<br>vs.<br>Defendant:<br>PURDUE PHARMACEUTICAL PRODUCTS LP | In The 151st<br>Judicial District Court of<br>Harris County, Texas<br>201 CAROLINE<br>Houston, Texas |

CITATION (NON-RESIDENT CORPORATE)

THE STATE OF TEXAS
County of Harris

To: ENDO HEALTH SOLUTIONS INC (DELAWARE CORPORATION) MAY BE SERVED THROUGHT IS REGISTERED AGENT THE CORPORATION TRUST COMPANY CORPORATION TRUST CENTER
1209 ORANGE ST, WILMINGTON DE 19801

Attached is a copy of: PLAINTIFFS FIRST AMENDED PETITION

This instrument was filed on March 1, 2021 in the above cited cause number and court. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED. You may employ an attorney. If you or your Attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 20 days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:

This citation was issued on March 11, 2021, under my hand and seal of said court.

Issued at the request of:

Musslewhite, Jeffrey B.
1776 YORKTOWN SUITE 450
HOUSTON, TX 77056
281-810-8780
Bar Number: 24041555

DISTRICT COURT OF HARRIS COUNTY TEXAS

Marilyn Burgess

Marilyn Burgess, District Clerk

Harris County, Texas
201 CAROLINE, Houston, TX 77002
(PO Box 4651, Houston, TX 77210)

Generated By: CYNTHIA CLAUSELL

Tracking Number: 73849138
EML

CAUSE NUMBER: 202070686

| | |
|---|---|
| PLAINTIFF: STRICKLAND, WARREN CLAY | In the 151st |
| vs. | Judicial District Court of |
| DEFENDANT: PURDUE PHARMACEUTICAL PRODUCTS LP | Harris County, Texas |

OFFICER - AUTHORIZED PERSON RETURN

Came to hand at ________ o'clock ___. M. on the __________ day of ___________________________, 20______. Executed at

(Address)________________________________________________________________ _________ in

______________________ County at o'clock ____. M. On the__________ day of ___________________________, 20______, by

Delivering to ________________________________________________defendant, in person, a true copy of this Citation together with the accompanying _______ copy(ies) of the Petition. Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this ________________day of ___________________________________, 20.

Fees $____________________________

_________________________________________________

By____________________________________________
Affiant Deputy

On this day, ________________________________________, known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _______ day of ________________________________, 20__

____________________________________________

Notary Public

3/1/2021 5:03 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 51043766
By: TERESA KIRBY
Filed: 3/1/2021 5:03 PM

**CAUSE NO. 2020-70686**

| | | |
|---|---|---|
| **WARREN CLAY STRICKLAND, PLAINTIFFS,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **PURDUE PHARMACEUTICAL PRODUCTS, L.P.; WALGREEN CO.; CVS PHARMACY, INC.; H-E-B, LP DEFENDANTS.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| | § | |
| | § | **234TH JUDICIAL DISTRICT** |

**PLAINTIFF WARREN CLAY STRICKLAND'S FIRST AMENDED PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Warren Clay Strickland**, hereinafter referred to as "Plaintiff," and files this, his First Amended Petition against **PURDUE PHARMACEUTICAL PRODUCTS, LP, PURDUE PHARMA L.P., THE PURDUE FREDERICK COMPANY, JANSSEN PHARMACEUTICALS, INC, ENDO PHARMACEUTICALS, INC, JOHNSON & JOHNSON, ALLERGAN PLC, ACTAVIS PLC, ACTAVIS, INC., ALLERGAN FINANCE, LLC, ACTAVIS LLC, ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON PHARMA, INC., AND WATSON LABORATORIES, INC, MCKESSON CORPORATION, WALGREEN CO., CVS PHARMACY, INC.** and **HEB, LP** hereinafter referred to as "Defendants," and in support thereof forcause of action would respectfully show this Honorable Court as follows:

**I.**
**DISCOVERY AND DOCKET CONTROL**

1.1 Plaintiff requests that Discovery be conducted under Level III of the TEXAS RULES OF CIVIL PROCEDURE. Plaintiff hereby requests that the parties to the lawsuit be permitted to

enterinto an agreed docket control order to schedule the deadlines of the instant action.

## II.
## PARTIES

2.1 Plaintiff Warren Clay Strickland is resident citizen of Houston, Harris County, Texas.

2.2 **PURDUE PHARMACEUTICAL PRODUCTS, LP** s a Delaware corporation that regularly commits torts in the State of Texas. Purdue manufactures, markets, and sells prescription pain medication and may be served, with process by serving its registered agent, Corporation Service Company d/b/a CSC• Lawyers Incorporating Service Company, 211 E. 7th, #620, Austin, TX78701. PURDUE PHARMA L.P. is a limited partnership organized under the laws of Delaware, and may be served through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. PURDUE PHARMA L.P. is, through its ownership structure, a Texas resident. PURDUE PHARMA INC. is a New York corporation with its principal place of business in Stamford, Connecticut, and may be served through its registered agent for service of process, Corporation Service Company, 80 State Street, Albany, NY 12207. THE PURDUE FREDERICK COMPANY is a Delaware corporation with its principal place of business in Stamford, Connecticut, and may be served through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808 (collectively, "Purdue").

2.3 **JANSSEN PHARMACEUTICALS, INC.** is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. JANSSEN PHARMACEUTICALS, INC. is a wholly owned subsidiary of JOHNSON & JOHNSON (J&J), a New Jersey corporation with its principal place of business in New Brunswick, New Jersey,

and may be served through its registered agent for service of process, Attention: Legal Department, One Johnson & Johnson Plaza, New Brunswick, NJ 08933. ORTHO-MCNEIL¬ JANSSEN PHARMACEUTICALS, INC., now known as JANSSEN PHARMACEUTICALS, INC., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. JANSSEN PHARMACEUTICA INC., now known as JANSSEN PHARMACEUTICALS, INC., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. J&J is the only company that owns more than 10% of Janssen Pharmaceuticals' stock, and corresponds with the FDA regarding Janssen's products. Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals' drugs and Janssen's profits inure to J&J's benefit. (Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., and J&J are referred to as "Janssen").

2.4 **WALGREEN CO.** is an Illinois corporation employing pharmacists in the State of Texas. Walgreen's may be served by serving its registered agent, Prentice Hall Corporation System, 701 Brazos Street, Suite 1050, Austin, TX 78701.

2.5 **CVS PHARMACY, INC.** is a Rhode Island corporation employing pharmacists in theState of Texas. CS may be served by serving its registered agent, CT Corporation Systems, 1999 Bryan St., #900, Dallas, Texas 75201.

2.6 **H-E-B, LP** is a Texas corporation employing pharmacists in the State of Texas. HEB may be served by serving its registered agent, Abel Martinez, 646 South Flores, St., San Antonio, Teas 78204.

2.7 **ENDO HEALTH SOLUTIONS INC.** is a Delaware corporation with its principal place of business in Malvern, Pennsylvania, and may be served through its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. ENDO PHARMACEUTICALS, INC. is a wholly-owned subsidiary of Endo Health

Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. (Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. are referred to as "Endo"). Endo develops, markets, and sells opioid drugs in the U.S. and in Dallas County. Endo also manufactures and sells generic opioids in the U.S. and based on information and belief manufactured the opioids taken by the Plaintiff, by itself and through its subsidiary, Qualitest Pharmaceuticals, Inc.

2.8 **ALLERGAN PLC** is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland. ACTAVIS PLC acquired Allergan plc in March 2015, and the combined company changed its name to Allergan plc in January 2013. Before that, WATSON PHARMACEUTICALS, INC. acquired ACTAVIS, INC. in October 2012, and the combined company changed its name to ALLERGAN FINANCE, LLC as of October 2013. ALLERGAN FINANCE, LLC is a Nevada Corporation with its principal place of business in Parsippany, New Jersey, and may be served through its registered agent for service of process, The Corporation Trust Company of Nevada, 701 S. Carson St., Suite 200, Carson City, NV 89701. WATSON LABORATORIES, INC. is a Nevada corporation with its principal place of business in Corona, California, and is a wholly-owned subsidiary of Allergan pie (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.), and may be served through its registered agent for service of process, Corporate Creations Network, Inc., 8275 South Eastern Ave., #200, Las Vegas, NV 89123. ACTAVIS PHARMA, INC. (f/k/a Actavis, Inc.) is a Delaware corporation with its principal place of business in New Jersey and was formerly known as WATSON PHARMA, INC, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. ACTAVIS LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey, and may be served through its registered agent for

service of process, Corporate Creations Network, Inc., 3411 Silverside Rd., Tatnall Building, Suite 104, Wilmington, DE 19810. Each of these Defendants is owned by Allergan pie, which uses them to market and sell its drugs in the United States.

2.9 Upon information and belief, Allergan pie exercises control over these marketing and sales efforts and profits from the sale of Allergan/Actavis products ultimately inure to its benefit. (Allergan plc, Actavis plc, Actavis, Inc., Allergan Finance, LLC, Actavis LLC, Actavis Pharma, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Watson Laboratories, Inc. are referred to as "Actavis"). Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc. on December 30, 2008 and began marketing Kadian in 2009. Upon information and belief, Actavis manufactures, promotes, sells, and distributes opioids taken by Plaintiff.

2.10 **MCKESSON CORPORATION** ("McKesson") is a Delaware corporation with its principal place of business in San Francisco, California, and may be served through its registered agent for service of process, CSC - Lawyers Incorporating Service, 211 E. 7th Street, Suite 620, Austin, TX 78701. Upon information and belief, McKesson is a pharmaceutical distributor licensed to do business in Texas. Based upon information and belief McKesson distributes pharmaceuticals to retail pharmacies and institutional providers in all 50 states, including Texas and Harris County.

2.11 **CARDINAL HEALTH, INC.** ("Cardinal") is an Ohio Corporation with its principal place of business in Dublin, Ohio, and may be served through its registered agent for service of process, CT Corporation System, 4400 Easton Commons, Suite 125, Columbus, OH 43219. Cardinal does substantial business in Texas and, upon information and belief, Cardinal is a pharmaceutical distributor licensed to do business in Texas. Based upon information and belief Cardinal distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Texas and Harris County.

2.12 **AMERISOURCEBERGEN DRUG CORPORATION** ("Amerisource") is a

Delaware Corporation with its principal place of business in Chesterbrook, Pennsylvania, and may be served through its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. Amerisource does substantial business in Texas and, upon information and belief, Amerisource is a pharmaceutical distributor licensed to do business in Texas. Based upon information and belief Amerisource distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Texas and Harris County.

## III.
## JURISDICTION AND VENUE

3.1 This Court has jurisdiction in this matter because the damages to Plaintiff are within the jurisdictional limits of this Court. The amount in controversy is more than $500 but does not exceed $1,000,000.00.

3.2 All or a substantial part of the events or omission giving rise to the claim occurred in Harris County. Therefore, venue is proper pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE §15.001 and §15.002(a) (1). Johnson & Johnson, which contracted with poppy growers in Tasmania, supplied 60 percent of the opiate ingredients that drug companies used for opioids like oxycodone, and aggressively marketed opioids patients such as the Plaintiff as safe and effective. A Johnson & Johnson subsidiary, Janssen Pharmaceuticals, made its own opioids — a pill whose rights it sold in 2015.

3.3 All conditions precedent to the filing of this suit have been met.

## IV.
## FACTUAL BACKGROUND

4.1 The United States is in the midst of an opioid epidemic caused by Defendants' fraudulent marketing and sales of prescription opioids ("opioids") that has resulted in addiction, criminal activity, and loss of life. The opioid crisis has been described as "the AIDS epidemic of our

generation, but even worse."[1] On October 26, 2017, President Donald Trump "declared a nationwide public health emergency to combat the opioid crisis."[2]

4.2 In 2016 alone, health care providers wrote more than 289 million prescriptions for opioids, enough for every adult in the United States to have more than one bottle of pills. Americans "consume 85% of all the opioids in the world"[3] and are "the most medicated country in the world."[4]

4.3 Unfortunately, using opioids too often leads to addiction and overdose from opioids. In 2014, almost 2 million Americans were addicted to opioids.[5] That same year, more people died from drug overdoses than in any other year, and most overdose deaths involved an opioid. The Texas Legislature has found "that deaths resulting from the use of opioids and other controlled substances constitute a public health crisis."[6] In 2015, Texas "had the second highest total healthcare costs from opioid abuse in the nation ($1.96 billion)."[7]

4.4 In fact, accidental drug overdose deaths, of which reportedly at least two-thirds are opioid overdoses, are the leading cause of death for Americans under the age of 50. Accidental drug overdose deaths, predominantly from opioids, exceed the number of deaths caused by cars or guns.

---

[1] David Wright, "Christie on Opioids: "This is the AIDS Epidemic of Our Generation, but even Worse," (February 28, 2021), http://www.cnn.com/2017/10/27/politics/chris-christie-opioid-commission-aids-cnntv/index.html.

[2] Dan Merica, "What Trump's Opioid Announcement Means- and Doesn't Mean," (February 28, 2021), http://www.cnn.com/2017/10/26/politics/national-health-emergency-national-disaster/index.html.

[3] *Prevalence of Opioid Misuse,* BupPractice (Sept. 7, 2017), https://www.buppractice.com/node/15576.

[4] David Wright, "Christie on Opioids: "This is the AIDS Epidemic of Our Generation, but even Worse," (February 28, 2021), http://www.cnn.com/2017/10/27/politics/chris-christie-opioid-commission-aids-cnntv/index.html.

[5] Substance Abuse and Mental Health Services Administration, National Survey on Drug Use and Health, 2014.

[6] Opinion of the Attorney General of Texas, KP-0168 (Oct. 4, 2017), citing Act of May 26, 2017, 85th Leg., R.S., ch. 534, §3, 2017 Tex. Sess. Law Serv. 1467, 1468.

[7] Kerry Craig, "Opioid Addiction Results in one Woman's Daily Struggle," Oct. 7, 2017, https://www.ssnewstelegram.com/news/opioid-addiction-results-in-one-woman-s-daily-struggle/article_bded4e0a ab80-1 1 e 7-a252-d3f304e26628.html.

The economic burden caused by opioid abuse in the United States is at least $78.5 billion,[8] including lost productivity and increased social services, health insurance costs, increased criminal justice presence and strain on judicial resources, and substance abuse treatment and rehabilitation.

4.5 This epidemic did not occur by chance. Defendants manufacture, market, distribute, and sell prescription opioids, including, but not limited to, brand-name drugs like OxyContin, Vicodin, Opana, Percocet, Percodan, Duragesic, Ultram, Ultracet, and generics like oxycodone, oxymorphone, hydromorphone, hydrocodone, fentanyl, and tramadol, which are powerful narcotics.

4.6 Historically, opioids were considered too addictive and debilitating for treating non-cancer chronic pain, such as back pain, migraines, and arthritis, and were used only to treat short-term acute pain or for palliative or end-of-life care. By the late 1990s or early 2000s, however, based on information and belief, each Defendant who manufactures and distributes opioids began a marketing scheme to persuade doctors and patients that opioids can and should be used ubiquitously and perpetually to treat moderate, non-cancer chronic pain. Based on information and belief manufactures of opioids spent large sums of money to promote the benefits of opioids for non-cancer moderate pain while trivializing, or even denying, their risks. The named Defendants who manufacture opiods promotional messages deviated substantially from any approved labeling of the drugs and caused prescribing physicians and consuming patients to underappreciate the health risks, and to overestimate the benefits, of opioids.

4.7 Contrary to the language of their drugs' labels, based on information and belief Defendants falsely and misleadingly, in their marketing: (1) downplayed the serious risk of addiction; (2) promoted and exaggerated the concept of "pseudoaddiction" thereby advocating that

[8] *See CDC Foundation's New Business Pulse Focuses on Opioid Overdose Epidemic*, Centers for Disease Control and Prevention (Mar. 15, 2017), https://www.cdc.gov/media/releases/2017/a0315-business-pulse-opioids.html.

the signs of addiction should be treated with more opioids; (3) exaggerated the effectiveness of screening tools in preventing addiction; (4) claimed that opioid dependence and withdrawal are easily managed; (5) denied the risks of higher opioid dosages; and (6) exaggerated the effectiveness of "abuse-deterrent" opioid formulations to prevent abuse and addiction.

4.8 Based on information and belief Defendant Manufacturers and Distributors disseminated these falsehoods through ads and/or their sales representatives who supported Defendants' message. Sales representatives, working at Defendants' behest, promoted highly addictive opioids through souvenirs and toys including, but not limited to, opioid brand-bearing stuffed plush toys, dolls, coffee cups, fanny packs, water bottles, notepads, pens, refrigerator magnets, clocks, letter openers, rulers, daytime planners, bags, puzzles, posters, hand-held calculators, clipboards, highlighters, flashlights, key chains, clothing, reflex mallets, and mock-ups of the United States Constitution.

4.9 Based on information and belief defendants also used third parties they controlled by: (a) funding, assisting, encouraging, and directing doctors, known as "key opinion leaders" ("KOLs") and (b) funding, assisting, directing, and encouraging seemingly neutral and credible professional societies and patient advocacy groups (referred to hereinafter as "Front Groups"). Based on information and belief Defendants worked with KOLs and Front Groups to taint the sources that doctors and patients relied on for ostensibly "neutral" guidance, such as treatment guidelines, Continuing Medical Education ("CME") programs, medical conferences and seminars, and scientific articles. After their individual and concerted efforts, Plaintiff believes Defendants. convinced doctors that instead of being addictive and unsafe for long-term use in most circumstances, opioids were required in the compassionate treatment of chronic pain.

4.10 Cardinal, AmerisourceBergen, and McKesson are three of the largest opioid distributors in the United States. Based on information and belief Cardinal, AmerisourceBergen, and

McKesson purchased opioids from Manufacturing Defendants herein and sold them to pharmacies servicing consumers in Harris County, including the Plaintiff's pharmacies.

4.11 The Manufacturing Defendants and Distributor Defendants worked hand and glove to glut the U.S. and take advantage of people including the Plaintiff in this suit. Each Defendant disregarded its legal duty to report suspicious opioid prescriptions, failed to implement sufficient controls to prevent opioid abuse, perpetuated falsehood and misrepresentations of opioid us and each Defendant financially benefitted from the other Defendants, disregarding their individual duties to exercise due care and due diligence in the manufacturing, sale, and distribution of dangerous narcotics.

4.12 Based on information and belief, Defendants spread false and deceptive statements related to opioid prescriptions taken by Plaintiff by (1) marketing their branded opioids directly to the Plaintiff's doctors and (2) deploying so-called unbiased and independent third parties to Harris County.

4.13 Based on information and belief, Defendants' direct marketing of opioids generally proceeded on two tracks. First, each Defendant conducted advertising campaigns touting the purported benefits of their branded drugs. Based on information and belief, Defendants spent more than $14 million on medical journal advertising of opioids in 2011, nearly triple what they spent in 2001, including $8.3 million by Purdue, $4.9 million by Janssen, and $1.1 million by Endo.

4.14 Based on information and belief, a number of Defendants' branded ads deceptively portrayed the benefits of opioids for chronic pain. For example, Endo distributed and made available on its website, www.opana.com, a pamphlet promoting Opana ER with photographs depicting patients with physically demanding jobs like a construction worker and chef, implying that the drug would provide long-term pain-relief and functional improvement. Purdue also ran a series of ads,

called " pain vignettes," for OxyContin in 2012 in medical journals. These ads featured chronic pain patients just like the Plaintiff and recommended OxyContin. One ad described a "54-year-old writer with osteoarthritis of the hands" and implied that OxyContin would help the writer work more effectively. Pursuant to a settlement agreement, Endo and Purdue agreed in late 2015 and 2016 to halt these misleading representations in New York, but based on information and belief, they continued to disseminate them in Texas.

4.15 This is case is a personal injury claim for injuries and damages sustained by Warren Clay Strickland as a result of the negligence of the Defendants in the manufacturing, sales, marketing, dissemination of information, and lack of effective controls to prevent abusive practices in proscribing and filling prescriptions.

4.16 Plaintiff Strickland suffered damages from the effects of consuming too much narcotic medication. OxyContin, Oxycodone and Hydrocodone are strong central nervous system depressants that, when taken appropriately, are intended to provide powerful pain relief to patients who suffer from extreme acute or chronic pain conditions. People who consume an unsafe dosage of these drugs can suffer from depression, kidney disease, suicidal thoughts as well as death. Unfortunately for Warren Strickland said medication was improperly marketed and Walgreen's pharmacy, CVS pharmacy or the HEB Pharmacy failed to monitor for red flags, how much medication was prescribed, by how many physicians it was prescribed, other medications being prescribed, interactions with other how much medication was being prescribed and consumed. Walgreen's pharmacy, CVS pharmacy or the HEB Pharmacy negligently filled prescriptions that should have raised red flags and failed to report these red flags.

**V.**

**CLAIMS AGAINST PURDUE PHARMACEUTICALS, ENDO, AND JANSSEN PHARMACEUTICALS, INC**

5.1 Plaintiff re-alleges and incorporates by reference each of the allegations contained in

the preceding paragraphs of this Complaint as though fully alleged herein.

5.2 Purdue Endo, and Janssen are liable under one or more of three different theories of liability recognized under Texas law. Purdue is strictly liable under the principles of RESTATEMENT (SECOND) OF TORTS, §§402A and 402B, and the new RESTATEMENT (THIRD) OF TORTS, for productdefects and misrepresentations.

5.3 Purdue's, Endo's and Janssen's conduct is unreasonable, and negligent, and was a proximate cause of Warren Strickland's injuries and damages. The negligence includes failure to warn, failure to test, failure to implement appropriate patient screening mechanisms, and over-promotion of Oxycontin,Oxycodone, Hydrocodone and other prescription opioids.

## VI.
## CLAIMS AGAINST
## AMERISOURCE, ENDO, ACTAVIS, MCKESSON AND CARDINAL

6.1. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged herein.

6.2. Amerisource, Endo, Activis, McKesson, and Cardinal have a duty to the plaintiff and the general public to exercise ordinary care in distributing dangerous narcotics. Amerisource, Endo, Activis, McKesson, and Cardinal have breached their duty by failing to prevent or reduce the distribution of opioids, perpetuating false statements and misinformation, and failing to report the increase in the distribution and/or sale of opioids. Amerisource, Endo, Activis, McKesson, and Cardinal have failed to prevent or reduce the distribution of opioids, perpetuated false statements and misinformation, and failed to report any increases in the sale of opioids, so that they could increase the sale and distribution of opioids, increase profits and receive rebates or kickbacks from Manufacturing Defendants. As a proximate result, Amerisource, Endo, Activis, McKesson, and Cardinal and their agents have caused Plaintiff substantial harm. As such Distributor defendants are liable for negligence. Based on information and belief, Amerisource, Endo, Activis, McKesson, and

Cardinal have acted willfully, wantonly, and maliciously.

**VII.**
**NEGLIGENCE CLAIMS AGAINST WALGREENS, CVS AND HEB PHARMACY**

7.1. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged herein.

7.2. Walgreen's, CVS and HEB Pharmacy, (hereinafter Pharmacy Defendants) are liable as the employer of the pharmacistswho dispensed medications the without regard to abuse and misuse of the opioid prescriptions. They owed Plaintiff the duty to exercise that degree of care, skill, and diligence ordinarily possessed and used by other members of the pharmacy profession in good standing under the same or similar circumstances.

7.3. In deciding whether there is a common-law duty, courts apply the risk-utility test. *Foster v. Denton ISD*, 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.); *see Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex.1998). The factors that courts use when applying the risk-utility test are the risk, foreseeability, and likelihood of injury balanced against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing this burden on the defendant. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex.1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994); *Nichols v. McKinney*, 553 S.W.3d 523, 528 (Tex. App.—Waco 2018, pet. denied). When these factors are balanced, the most important factor to consider is the foreseeability of the risk. *City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex.2009). Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex.1999) (plurality op.); *Madison v. Williamson,* 241 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The test for foreseeability is whether (1) the injury is of a general character that might reasonably have been anticipated and (2) the injured party is situated in relation to the wrongful act so that injury to her or to

one similarly situated might reasonably have been foreseen. *Mellon Mortg.*, 5 S.W.3d at 655. In addition to foreseeability, Courts also consider additional factors such as whether one party had superior knowledge of the risk. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex.2017); *Nabors Drilling, U.S.A., Inc. v. Escoto,* 288 S.W.3d 401, 404 (Tex.2009).

7.4. Here the Pharmacy Defendants had superior knowledge of the risk of the opioid use and superior knowledge of a patient prescription history and are in the best position to prevent the diversion of prescriptions. Pharmacy Defendants conduct education seminars, communicate with regulatory authorities, and employee highly trained and educated pharmacists and other staff—all of whom are in a better position to know of the risk of opioid abuse. Specifically, pharmacies are in a better position to know and explain certain risks related to opioid use including the risk of overdose, addiction, respiratory depression, or over-sedation, as well as risks involved in mixing opioids with alcohol or other medications. Additionally, pharmacists are in the best position to monitor the filling and use of controlled substances including opioids given their training and education and therefore, are in the best position to refuse to fill prescriptions that raise red flags.

7.5. Additionally, pharmacies, have access to a national database which monitors controlled substances prescription and are in the best position to look for red flags on a patient, prescriber, and store level, and to refuse to fill and to report prescriptionssuggestive of potential diversion and abuse. Therefore, the pharmacy defendants had a duty to block all suspicious orders on prescriptions. Pharmacy order data provides detailed insight into the volume, frequency, dose, and type of controlled and non-controlled substances a pharmacy typically orders. This includes non-controlled substances and Schedule IV controlled substances (such as benzodiazepines as Plaintiff used in this case), which are not reported to the DEA, but whose use with opioids can be a red flag of diversion. As acknowledged in an article CVS published in the New England Journal of Medicine, "[p]harmacies have a role to play in the oversight of prescriptions for controlled

substances, and opioid analgesics in particular." Mitch Betses, R.Ph., and Troyen Brennan, M.D., M.P.H., *Abusive Prescribing of Controlled Substances - A Pharmacy View*, N. ENGL. J. MED. 369;11, Sept. 12., 2013, at 989-991.

7.6. The Pharmacy Defendants have a particular "advantage" in meeting their obligations under the CSA because these entities can use "aggregated information on all prescriptions filled at the chain" in order to examine "patterns" of opioids and other "high-risk drugs" and target "inappropriate prescribing." *Id.* at 990. For example, pharmacy Defendants should properly use its chainwide dispensing data to identify "high risk prescribers" by "benchmarking" prescription data based on "several parameters," including "volume of prescriptions for high-risk drugs," "the proportion of the prescriber's prescriptions that were for such [high-risk] drugs, as compared with the volume and proportion for others in the same specialty and region," cash payment, ages of patients, and the prescriber's ratio of "prescriptions for noncontrolled substanceswith prescriptions for controlled substances." *Id.* This "[a]nalysis of aggregated data" from chainpharmacies can "target patterns of abuse," in the face of "the growing use of controlled substancesand resulting illnesses and deaths." *Id.* Accordingly, as CVS touts, "innovative use of transparentdata is only prudent." *Id.* Therefore, the Pharmacy defendants have superior knowledge of abuses, misuses, risks, and red flags which best situates the defendants to refuse prescription and provide basic information related to prescriptions and interactions with other prescriptions.

7.7. Specifically, pharmacists and pharmacies have a duty to exercises reasonable care in delivering dangerous narcotics substances by filling orders that they knew or should have realized were likely being diverted for illicit uses, abuses, and misuses, and by failing to maintain effective controls against illicit uses, abuses, and misuses from their retail stores, Defendants breached that duty and both created and failed to prevent a foreseeable risk of harm. Second, distributors and chains pharmacies are required to register with the DEA to distribute and/or dispense controlled

substances. *See* 21 U.S.C. § 823(a)-(b), (e); 28 C.F.R. § 0.100; 28 C.F.R. § 1301.71. As registrants, Defendants were required to "maint[ain]…effectivecontrols against diversion" and to "design and operate a system to disclose…suspicious orders of controlled substances." 21 U.S.C. § 823(a)-(b); 21 C.F.R. § 1301.74.

7.8. Administrative rules and regulations may serve as the basis for imposing a duty recognized in tort. *See Continental Oil Co. v. Simpson*, 604 S.W.2d 530, 534 (Tex. App.—Amarillo 1980, writ ref'd n.r.e.) (administrative rules and regulations). According to the Texas Administrative Code, Pharmacist have a duty to: (1) before dispensing an opioid, benzodiazepine, barbiturate, or carisoprodol for a patient shall consult the Texas Prescription Monitoring Program (PMP) database or a pharmacy management system that integrate data from the PMP, to review the patient's controlled substance history. Defendants failed to consult any database for patient information including prescription history.

7.9. Defendants were further required to take steps to halt suspicious orders. Specifically, Defendants had a duty to analyze data and store-level information for known red flags such as (a) multiple prescriptions to the same patient using the same doctor; (b) multiple prescriptions by the same patient using different doctors; (c) prescriptions of unusual size and frequency for the same patient; (d) orders from out-of-state patients or prescribers; (e) an unusual or disproportionate number of prescriptions paid for in cash; (f) ***prescriptions paired with other drugs frequently abused with opioids, like benzodiazepines, or prescription "cocktails"***; (g) ***volumes, doses, or combinations that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose***. Despite these red flags, Pharmacy Despite the presence of red flags and potential medication interactions Defendants failed to provide basic information concerning the prescriptions, interactions with Plaintiff's medications, filled suspicious prescriptions, and failed to exercise the degree of care, skill, and diligence owed to Plaintiff.

7.10. Walgreen's, CVS and HEB failed in conducting due diligence, failed in acting on the presence of red flags, and failed to provide even the most basic information regarding the effects of the combination of the medication they were prescribing, failed to obtain informed consent, failed to develop an effective system for monitoring suspicious prescriptions, and failed to monitor their customers, these failures constitutes sub- standard pharmacy care and is negligence as that term is defined at law. These actions, or lack thereof, were also a proximate cause of Plaintiff's damages.

## VIII.
## NEGLIGENCE *PER SE* CLAIMS AGAINST WALGREENS, CVS AND HEB PHARMACY

8.1. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged herein.

8.2. In the alternative to other counts, Pharmacy defendant's negligence described in herein, violated an administrative regulation}. Specifically, Pharmacy defendants failed to comply with 21 C.F.R. § 1301.74 and not maintaining records of prescriptions for controlled substances listed in Schedule II in compliance with 21 C.F.R. part 1304, in violation of 21 U.S.C. § 842(a)(5) These regulations clearly define a mandatory standard of conduct for which negligence per se can be applied. *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.—Texarkana 2002, pet. denied). To impose negligence per se for a violation of 21 C.F.R. § 1301.74, imposing tort liability would be fair, workable, and wise. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex.1998)

## IX.
## PLAINTIFF'S CLAIMS FOR DAMAGES

9.1 As a result of the negligence and gross negligence by Defendants, Plaintiff incurred necessary hospital and medical expenses and will continue to incur medical expenses in connection with said injuries for an undetermined length of time in the future.

9.2 As a direct and proximate result of the negligence of Defendant, Plaintiff suffered severe injuries and extreme physical pain, suffering and mental anguish, physical incapacity and in all probability, Plaintiff will be forced to endure physical pain, suffering, mental anguish and physical incapacity for an undetermined length of time and probably for the remainder of his life. Plaintiff continues to require ongoing medical treatment and in reasonable probability will continue to require medical treatment for the rest of his life.

9.3 All damages sought by Plaintiff include damages that were sustained in the past, and that, in reasonable probability, will be sustained in the future. Plaintiff seeks both pre- judgment and post-judgment interest as allowed by law, for all costs of Court, and all other relief,both at law and in equity. Therefore, Plaintiff hereby sees to recovery of all damages allowed bylaw, not to exceed $1,000,000.00 including any damages to compensate him for the following:

A. all necessary medical care expenses in the past;

B. all necessary medical care expenses that, in reasonable probability,Plaintiff will sustain in the future;

C. physical pain and suffering in the past;

D. physical pain and suffering that, in reasonable probability, Plaintiff will sustain in the future;

E. mental anguish in the past;

F. mental anguish that, in reasonable probability, Plaintiff will sustain in the future;

G. physical impairment in the past;

H. physical impairment that, in reasonable probability, Plaintiff will sustain in the future;

I. loss earning in the past and, in reasonable probability, will be lost in the future; and

## X.
## REQUEST FOR DISCLOSURE

10.1 Pursuant to Texas Rule of Civil Procedure 194, request is made that Defendant disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2 (a)-(l). Defendant must serve a written response to these Requests for Disclosure on Plaintiff within fifty (50) days after the service of this request. Failure to timely respond shall constitute an abuse of discovery pursuant to Texas Rule of Civil Procedure 215.

## XI.
## RULE 193.7 NOTICE

11.1 Plaintiff hereby puts Defendant on notice that Plaintiff intends to use Defendant's discovery responses as evidence at trial in accordance with such right and privileges established by Texas Rule of Civil Procedure 193.7.

## XII.
## JURY DEMAND

12.1 Pursuant to the Texas Rule of Civil Procedure 216, Plaintiff respectfully requests and demands a trial by jury.

## XIII.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that the Defendantbe cited to appear and answer herein as the law directs, and that upon final hearing, Plaintiff haveand recover judgment of and from the Defendant pursuant to the above and foregoing allegationsin such amounts not to exceed $1,000,000.00 as hereinabove set out and as the evidence may show proper at the time of trial, together with interest thereon at the legal rate, costs of Court, exemplary damages, attorneys' fees and for such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**BROWN & MUSSLEWHITE, LLP**

/s/ JEFF MUSSLEWHITE
Jeff Musslewhite
TBN: 24041555
Jeff@lbjmlaw.com
Lori L. Brown TBN:
00792375
Lori@lbjmlaw.com 1776
Yorktown, #450
Houston, Texas 77056
Telephone No.: 281-810-8780
Facsimile No.: 888-599-4190
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record on the 1st day of March, 2021 pursuant to the Texas Rules of Civil Procedure:

Jason M. Powers
Stacey Neumann Vu
Casey Downing
VINSON & ELKINS, L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Phone: 713-758-2522
Fax: 713-615-5809
Email: jpowers@velaw.com
svu@velaw.com
cdowning@velaw.com

Attorney for Defendant
H-E-B, LP

Lindsay B. Cohan
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, Texas 78701
Phone: 512-394-3000
Fax: 512-394-3001
Email: lindsay.cohan@dechert.com

Attorney for Defendant
Purdue Pharmaceutical Products LP

Phil Griffis
Jerry Mason
LAW OFFICE OF PHIL GRIFFS
1322 Space Park Drive, Suite A248
Houston, Texas 77058
Phone: 832-284-4013
Fax: 713-493-7253
Email: pgriffis@griffislawfirm.com
jmason@griffslawfirm.com

Attorney for Defendant
Walgreen Co.

John A. Scully
Nisha P. Byers
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Phone: 214-712-9500
Fax: 214-712-9540
Email: john.scully@cooperscully.com
nisha.byers@cooperscully.com

Attorney for Defendant
CVS Pharmacy, Inc.

*/s/Jeff Musslewhite*
JEFF MUSSLEWHITE

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| WARREN CLAY STRICKLAND,<br><br>Plaintiff,<br><br>v.<br><br>PURDUE PHARMACEURITCAL PRODUCTS, L.P.; WALGREEN CO. CVS PHARMACY, INC.; H-E-B, LP:<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.: 2021-cv-01176**<br>**Date Served:** March 17, 2021 |

---

**INDEX OF MATTERS BEING FILED**

---

As required under Local Rule 81, the following is a list of the documents being filed with the Notice of Removal in this action:

1. Service of Process, Petition served on Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.;
2. The Index of Matters Being Filed;
3. A List of Counsel, including address, telephone numbers, and parties represented; and
4. Copies of State Court Pleadings;
    a. Copy of the State Court Docket Sheet;
    b. Certified Copy of Plaintiff's Original Petition; and
    c. Certified Copy of executed process.

The state court has not signed any order in this case.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| WARREN CLAY STRICKLAND,<br><br>Plaintiff,<br><br>v.<br><br>PURDUE PHARMACEURITCAL PRODUCTS, L.P.; WALGREEN CO. CVS PHARMACY, INC.; H-E-B, LP:<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.: 2021-cv-01176**<br>**Date Served:** March 17, 2021 |

---

## LIST OF COUNSEL

---

Pursuant to Local Rule 81, listed below are all counsel of record:

Jeff Musslewhite
BROWN & MUSSLEWHITE, LLP
State Bar No. 24041555
jeff@lbjmlaw.com
Lori L. Brown
State Bar No. 00792375
lori@lbjmlaw.com
1776 Yorktown, #450
Houston, TX 77056
Tel: (281) 810-8780
Fax: (888) 599-4190

*Counsel for Plaintiff*
*Warren Clay Strickland*

Hannah D. Sibiski
Texas State Bar No. 24041373
Hannah.Sibiski@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
T: (713) 576-2400
F: (713) 576-2499

*Attorney for Defendants*
*Endo Health Solutions Inc. and*
*Endo Pharmaceuticals Inc.*

Jason M. Powers
Stacey Neumann Vu
Casey Downing
VINSON & ELKINS, L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Tel: (713) 758-2522
Fax: (713) 615-5809
jpowers@velaw.com
svu@velaw.com
cdowning@velaw.com

*Counsel for H-E-B, L.P.*

John A. Scully
Nisha P. Byers
COOPER & SCULLY P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Tel: (214) 712-9500
Fax: (214) 713-9540
john.scully@cooperscully.com
nisha.byers@cooperscully.com

*Counsel for CVS Pharmacy, Inc.*

Phil Griffis
Jeffry Mason
LAW OFFICE OF PHIL GRIFFIS
1322 Space Park Drive, Suite A248
Houston, Texas 77058
Tel: (832) 284-4013
Fax: (713) 493-7253
pgriffis@griffislawfirm.com
jmason@griffislawfirm.com

*Counsel for Walgreen Co.*

Wesley Hill
Brett F. Miller
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 212-3937
Fax: (903) 757-2323
wh@wsfirm.com
bmiller@wsfirm.com

*Counsel for Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

Craig Smyser
Crystal Robles
SMYSER KAPLAN & VESELKA, LLP
717 Texas Avenue, Suite 2800
Houston, TX 77002
Tel: (713) 221-2300
Fax: (713) 221-2320
csmyser@skv.com
crobles@skv.com

*Counsel for McKesson Corporation*

Stephen E. McConnico
Steven J. Wingard
John W. Ellis
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smconnico@scottdoug.com
swingard@scottdoug.com
jellis@scottdoug.com

*Counsel for Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

Stan Berry
Nicole S. Soussan Caplan
Emma L. Short
REED SMITH LLP
811 Main Street, Suite 1700
Houston, TX 77002
Tel: (713) 469-3800
Fax: (713) 469-3899
sperry@reedsmith.com
nsoussan@reedsmith.com
eshort@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

Nancy Patterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St. Suite 4000
Houston, TX 77002
Tel: (713) 890-5764
Fax: (713) 890-5001

*Counsel for Defendant Watson Laboratories, Inc.*

Michael W. Mengis
Matt R. Raley
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
Tel: (713) 751-1600
Fax: (713) 751-1717
mmengis@bakerlaw.com
mraley@bakerlaw.com

*Counsel for Carnival Health, Inc.*